IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADRANIH ERNAY, ADRIAN ERNAY, WENDELL WESLEY, OTIS RAGLAND, LINDA FAUST, WILLIAM CHRISTY, A Minor By and Through His Natural Parent Guardian Linda Faust, DENASIA CHRISTY, A Minor By and Through Her Natural Parent and Guardian Linda Faust  Plaintiffs, | : : : : : : : : : | CIVIL ACTION  NO. 10-1035 |
| v. | : : | |
| CHRIS SWATSKI, JOHN DOE #1 THROUGH #6  Defendants. | : : : : | |

**DuBOIS, J.**                                                                                                                June 23, 2010

## **M E M O R A N D U M**

### I. INTRODUCTION

This is a civil rights case arising under 42 U.S.C. § 1983 in which plaintiffs, Adranih Ernay, Adrian Ernay, Wendell Wesley, Otis Ragland, Linda Faust, William Christy, and Denasia Christy allege that defendants, Chris Swatski and John Does #1-6, violated their constitutional rights under the Fourth Amendment during a search of plaintiffs' apartments. Plaintiffs Adrian Ernay, Wendell Wesley, and Otis Ragland also allege that defendant Swatski, John Doe #1, and John Doe #2 used excessive force during the search.

Presently before the Court is defendant Swatski's Motion To Dismiss In Part. For the reasons set forth below, the Court grants the motion in part and denies the motion in part. The motion is granted as it pertains to the claims against defendant Swatski in his official capacity, and the Fourth Amendment claim asserted by William and Denasia Christy in Count One. By

agreement of the parties, the motion to dismiss plaintiffs' state law claim is marked withdrawn as erroneously included in the Complaint, and the motion to dismiss the excessive force claim in Count Three is denied without prejudice to defendant Swatski's right to raise the defense of qualified immunity (and any other appropriate defense) at a later stage in the case.

## II. BACKGROUND[1]

At approximately 5 a.m. on March 10, 2008, defendants, all Pennsylvania Board of Probation and Parole officers, arrived at plaintiffs' duplex apartment at 1004 Wagontown Road, Valley Township, Pennsylvania, to search for parole absconder Jesse James Keene. (Compl. ¶¶ 1-14, 36.) Plaintiff Faust and her children, William and Denasia Christy, live in Apartment A; Faust's cousin, plaintiff Adranih Ernay, her sons, plaintiffs Adrian Ernay and Wendell Wesley, and her nephew Otis Ragland live in Apartment B. (Id.) Keene's ex-girlfriend, Stephanie Leland, lived in Apartment A at that address for less than a year in 2004. (Id. ¶¶ 17, 18.)

Defendants assembled in front of the apartments and began pounding on the door marked "A." (Id. ¶¶ 39, 40.) Faust was awoken by the pounding and came downstairs to see who was at her door. (Id. ¶ 41.) Defendants identified themselves as the police and demanded that Faust open the door. (Id. ¶¶ 42, 43.) Faust complied and defendants pushed their way into the apartment. (Id. ¶ 43.) Once inside, defendants showed Faust a picture of Keene. (Id. ¶ 44.) In response Faust stated that she did not know Keene. (Id.) Defendants then "focused" on Adranih Ernay's door, the door to Apartment "B." (Id. ¶ 46.)

Faust offered to get Adranih Ernay herself if defendants agreed not to pound on Ernay's door. (Id. ¶¶ 47-48.) Defendants, without "true consent or invitation," followed Faust as she

---

[1] The facts are taken from the Complaint and presented in the light most favorable to the plaintiff.

-2-

walked through her home and out her back door to the common area between Apartment A and B. (Id. ¶¶ 49, 50.) Adranih Ernay opened her door at Faust's request and defendants entered her home. (Id. ¶¶ 51-53.) Defendants showed Adranih Ernay a picture of Keene. (Id. ¶ 55.) Adranih Ernay thought the picture was of her boyfriend and screamed.² (Id. ¶ 55.)

Her scream awoke plaintiffs Adrian Ernay, Wendell Wesley, and Otis Ragland; barely clothed, the three young men ran out of an upstairs bedroom and to the top of stairs. (Id. ¶¶ 57, 58.) When they got to the top of the stairs, Officers John Doe #1 and John Doe #2 pointed guns at the men and instructed them to freeze. (Id. ¶ 59.) The men complied and came downstairs with their hands up. (Id. ¶¶ 60-62.) Although Adrian Ernay and Wesley challenged the defendants' presence, defendants proceeded to search Apartment B for Keene. (Id. ¶¶ 68-74.) Adranih Ernay, who was not wearing her glasses the first time she looked at Keene's photo, put on her glasses and looked at the picture again. (Id. ¶¶ 54, 77.) On second glance, Adranih Ernay realized that the man in the photo was not her boyfriend and so informed Swatski. (Id. ¶¶ 77-78.) Swatski apologized to plaintiffs and defendants left Apartment B. (Id. ¶ 81.)

In their Complaint plaintiffs seek damages for defendants' alleged violations of their Fourth Amendment rights. The Complaint avers three counts: Count One, unreasonable search and seizure on behalf of plaintiff Faust and her children against all defendants; Count Two, unreasonable search and seizure on behalf of plaintiffs Adranih Ernay, Adrian Ernay, Wesley, and Ragland against all defendants; and Count Three, excessive force by defendants Swatski, John Doe #1, and John Doe #2 on behalf of plaintiffs Adrian Ernay, Wesley, and Ragland.

---

² Adranih Ernay kicked her boyfriend out of Apartment B the night before the search, but told defendants that her boyfriend's belongings were in a room downstairs. (Compl. ¶ 55-56.)

## III.  STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion.  In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ." Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id.  "Where a complaint pleads facts that are 'merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach" which it later formalized in Iqbal.  Iqbal, 129 S. Ct. at 1950.  Under this approach, a district court first identifies those factual allegations which constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950.  The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

## IV. DISCUSSION

Defendant Swatski, in his Motion To Dismiss In Part, alleges that: (1) plaintiffs do not state a state law claim upon which relief may be granted; (2) claims against defendant Swatski in his official capacity must be dismissed; (3) the claim on behalf of plaintiff Faust's children in Count One should be dismissed for failure to aver supporting facts; and (4) qualified immunity bars the excessive force claim in Count Three. For the reasons stated below, defendant Swatski's motion to dismiss plaintiffs' state law claim is marked withdrawn as erroneously included in the Complaint. Furthermore, the Court grants defendant's motion with regard to the claims against Swatski in his official capacity and the claim asserted on behalf of plaintiff Faust's children. Finally, defendant Swatski's motion is denied without prejudice as to the qualified immunity claim. The Court will address each claim below.

### A. State Law Claim

Defendant avers—and plaintiffs concede—that plaintiffs, in their Complaint, have not stated a state law claim upon which relief may be granted. (Def.'s Mot. ¶ 8; Pl.'s Mem. 2.) In their response, plaintiffs explain that any reference to state law in the Complaint, and this Court's supplemental jurisdiction over state law claims, resulted from a typographical error. (Pl.'s Mem. 2.) Therefore, by agreement of the parties, defendant's motion to dismiss plaintiffs' state law claim is marked withdrawn.

### B. Claims Against Defendant Swatski in His Official Capacity

Defendant and plaintiffs agree that all claims against Swatski in his official capacity must be dismissed. (Def.'s Mem. 6; Pl.'s Mem. 2.) In his official capacity, a state official is not a "person" subject to suit under 42 U.S.C. § 1983, insofar as he is sued for damages or other retroactive relief. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989); see also

Kentucky v. Graham, 473 U.S. 159, 165-167 n.14 (1985).  Accordingly, the Court grants defendant's motion to dismiss the claims against defendant Swatski in his official capacity.

### C.  Claim on Behalf of Plaintiff Faust's Children

The Complaint alleges that Faust and her two children, William Christy and Denasia Christy, "suffered some or all of the following harm" as a result of the defendant's violation of their Fourth Amendment rights: "fear, anxiety, upset, humiliation, embarrassment, severe emotional distress and psychological harm and injury." (Compl. ¶ 119.)  However, as defendant argues, the Complaint fails to aver facts to support the children's claim; their names do not even appear in the "factual allegations" section. (Def. Mem. 7; see Compl. ¶¶ 15-108.)

When considering a motion to dismiss, the Court looks to "the 'nub' of the plaintiff[s'] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Iqbal, 129 S. Ct. at 1950.  In this case, plaintiffs' Complaint fails to satisfy this standard.  Although plaintiffs respond that the children—who were sleeping upstairs during the search—will understand and be injured by defendants' conduct in the future, these assertions are speculative at best. (Pl.'s Mem. 3); see Ashcroft, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  Even construed in a light most favorable to plaintiffs, none of the facts alleged demonstrate any interaction between Swatski and Faust's children. (Pl.'s Mem. 3; Def.'s Mem. 7.)  Because plaintiffs did not aver sufficient facts to support their claim that the children were injured by defendant's conduct, the claims asserted on behalf of William and Denasia Christy in Count One are dismissed without prejudice to plaintiffs' right to file an amended complaint within twenty days if warranted by the facts.

### D.  Excessive Force Claim Against Defendant Swatski

Defendant argues that the doctrine of qualified immunity bars the excessive force claim in

Count Three. The doctrine of qualified immunity provides that government officials are immune from suits for civil damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which [a] reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Determining whether the defendants are entitled to qualified immunity requires two inquiries, which can be taken in either order. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). The first is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; the second is "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 816 (internal citations omitted).

Plaintiffs' averments that defendants used excessive force requires consideration of Graham v. Connor, 490 U.S. 386, 395 (1989). In Graham, the Supreme Court stated that the court must consider whether the officer's use of force was objectively reasonable under the circumstances; the officer's underlying motive or intentions are irrelevant. Id. at 397. This inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Furthermore, the officer's conduct should be evaluated from the officer's vantage point *at the time* of the incident. Id. at 396-97. "Police officers are often forced to make split-second judgements—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id.

Defendant Swatski argues that even if plaintiffs have alleged a violation of a constitutional right, an individual in his position could reasonably have believed that pointing a gun, or permitting officers to point guns, at the three men under the circumstances presented was

constitutional. (Def.'s Mem. 8-9.)  Defendant supports this position by highlighting the following facts: (1) Adranih Ernay initially stated that Keene resided in Apartment B; (2) Keene was convicted of violent offenses; (3) Keene is close in age to the men and all are African American; and (4) the guns were pointed while the men were running and did not yet have their hands up. (Id.)

In response, plaintiffs aver that defendant's conduct was unreasonable by emphasizing the following facts: (1) Ms. Ernay informed defendant Swatski that she kicked her boyfriend out of the home the previous evening; (2) the young men were coming downstairs in response to their mother's scream; (3) Adrian Ernay, Wesley, and Ragland were at least ten years younger then Keene; and, (4) the young men had nothing in their hands, were barely clothed, and did nothing to threaten defendants. (Id. ¶¶ 57-67.)

To survive a motion to dismiss under the first prong of Pearson, the Court must decide whether plaintiffs have "alleged or shown facts which make out a violation of a constitutional right." Pearson, 129 S. Ct. at 816 (internal citations omitted).  The Court concludes that plaintiffs have alleged facts sufficient to establish that defendant violated their Fourth Amendment rights. (See Compl. ¶¶ 15-108.)

The second prong of Pearson requires the Court to determine whether plaintiffs' constitutional right was clearly established at the time of the alleged violation. Pearson, 129 S. Ct. at 816.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), abrogated on other grounds, Pearson, 129 S. Ct. at 818.  Under Third Circuit law, depending on the totality of circumstances, merely pointing a gun may constitute excessive force. See Couden v. Duffy, 446 F.3d 483, 495

n.8 (3d Cir. 2006) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir. 1995)) (noting that an officer "*could* be liable for excessive force where they pointed guns at and handcuffed several non-threatening individuals") (emphasis added); Smith v. Mesinger, 293 F.3d 641, 651 (3d Cir. 2002) (citing Baker, 50 F.3d at 1186) ("[A] police officer who was the senior officer involved in executing a search warrant *could* be liable in a suit under § 1983 even though he did not personally use excessive force, nor direct anyone else to.") (emphasis added). The Court, in considering the facts alleged in the Complaint, cannot determine whether Swatski's conduct was reasonable under the circumstances, and thus, whether defendant is entitled to qualified immunity. In so ruling the Court notes that plaintiffs must prove that as supervisor, Swatski had "actual knowledge and acquiesced" in the use of force by John Doe #1 and 2, as the Complaint does not allege that Swatski brandished his weapon. See Smith, 293 F.3d at 651; (Compl. ¶ 59).

There are several factors in determining the reasonableness of defendant's conduct that are yet unanswered. These include, *inter alia*, "the duration of the officer's action . . . [and] the possibility that [the] suspect may be armed . . . ." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds, Curley v. Klem, 499 F.3d 199 (3d Cir. 2007). Moreover, because a determination of reasonableness requires the Court to look through Swatski's eyes, Graham, 490 U.S. at 396-97, the physical differences—the height, weight, and stature of defendants as compared to plaintiffs—may also be relevant to the question of qualified immunity.

Accordingly, defendant's motion to dismiss in part as it relates to the excessive force claim asserted in Count Three is denied without prejudice to defendant's right to raise the defense of qualified immunity (and any other appropriate defense) after the completion of relevant discovery by summary judgment motion and/or at trial.

## V. CONCLUSION

For all of the foregoing reasons, the Court grants defendant's motion as it pertains to the claims against defendant Swatski in his official capacity, and the claims brought by William and Denasia Christy in Count One. The Court denies without prejudice defendant's motion to dismiss the excessive force claim in Count Three. Defendant Swatski's motion to dismiss plaintiffs' state law claim is marked withdrawn as erroneously included in the Complaint.

An appropriate Order follows.