IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADRANIH ERNAY, ADRIAN ERNAY, WENDELL WESLEY, OTIS RAGLAND, and LINDA FAUST, <br><br> Plaintiffs, <br><br> v. <br><br> CHRIS SWATSKI, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 10-1035 |

**DuBOIS, J.**                                                                         **August 9, 2011**

**M E M O R A N D U M**

**I.   INTRODUCTION**

This case arises out of the March 18, 2008 search of plaintiffs' apartments by defendant Chris Swatski and agents of the Pennsylvania Board of Probation and Parole ("PBPP") whom he supervised.  Plaintiffs assert claims under 42 U.S.C. § 1983, alleging violations of their Fourth Amendment rights based on defendant's and his subordinates' entry into and search of their apartments.  By Memorandum and Order of July 22, 2011, the Court granted in part and denied in part Swatski's Motion for Summary Judgment.  Swatski timely filed a Motion for Reconsideration, which is presently before the Court.  For the reasons that follow, the Court grants in part and denies in part the Motion for Reconsideration.  The Court, having not addressed in its Memorandum and Order of July 22, 2011, the issue of qualified immunity based on Swatski's belief that a parole absconder was present at plaintiffs' property on the day of the

1

search, now addresses the issue and concludes that Swatski is not entitled to qualified immunity on that ground. Swatski's Motion for Reconsideration is denied in all other respects.

## II. BACKGROUND

The factual background of this case is set forth fully in the Court's Memorandum of July 22, 2011, and will not be repeated in this Memorandum except as is necessary to explain the Court's rulings on Swatski's motion for reconsideration.

## III. LEGAL STANDARD

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A prior decision may be altered or amended only if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in controlling law, (2) the availability of new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Id. Moreover, a motion for reconsideration is not properly grounded on a request that a court rethink a decision already made. Glendon Energy Co. v. Borough of Glendon, 836 F.Supp. 1109, 1122 (E.D. Pa. 1993); see also United States v. Jasin, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) ("Parties are not free to relitigate issues which the court has already decided."). A motion for reconsideration "addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through— rightly or wrongly." Glendon Energy, 836 F.Supp. at 1122.

**IV. DISCUSSION**

Swatski contends that the Court's Memorandum of July 22, 2011 failed to address three issues. First, with respect to the applicability of the consent exception to the warrant requirement, Swatski argues that the Court did not identify what he, as a supervisor, should have done differently to prevent unconstitutional conduct. Second, he asserts that the Court did not specifically rule on his claim of qualified immunity with respect to the exigent circumstances exception to the warrant requirement. Third, he argues that the Court did not specifically rule on his claim of qualified immunity with respect to the exception to the warrant requirement for an officer's reasonable belief that a parole absconder is in a residence.

**A.    Count I: Swatski's Supervisory Liability and the Consent Exception to the Warrant Requirement**

Swatski seeks reconsideration of the Court's denial of his motion for summary judgment as to Count I—plaintiff Linda Fausts's claim of unreasonable search and seizure—on the ground that "[e]ven if [he] had observed an unreasonable entry, he could not reasonably have stopped it." (Def. Swatski's Mot. for Reconsideration at 2.) He states that, with respect to the PBPP agents' second entry into Unit A, "three or four agents simply followed Faust into her residence." (Id.) With respect to the agents' first entry into Unit A, he asserts that at the time of the entry, he was occupied with knocking and announcing on the door of Unit B. (Id.) According to Swatski, a reasonable person in his position "could have believed that he could not have stopped either entry into Unit A." (Id.)

The Court rejects this argument. As the Court already concluded in its Memorandum of July 22, 2011, genuine issues of material fact exist as to whether any of the plaintiffs consented to the PBPP agents' searches of their apartments. Assuming, arguendo, that they did not

3

consent, a genuine issue of material fact also exists as to whether Swatski knew of this lack of consent.  Swatski testified that, as a PBPP supervisor, he had the authority to stop the searches of plaintiffs' apartments at any time, and that he also had the authority to "stop [the PBPP agents] from going to any residence, 1004 Wagontown or any other residence, for any specific reason." (Swatski Dep. at 44-46, 62-63.)  Given this admission, Swatski cannot now contend that he "could not reasonably have stopped" an unlawful entry into Unit A.  The Court accordingly rejects this argument and will not alter its ruling denying Swatski's motion for summary judgment as to Count I of the Complaint.

### B. Count II:  Qualified Immunity – Exigent Circumstances Exception

Swatski next argues he is entitled to qualified immunity as to Count II—plaintiffs Adranih Ernay, Adrian Ernay, Wendell Wesley, and Otis Ragland's claim of unreasonable search and seizure—because a reasonable person in his position could have believed that Adranih Ernay's scream upon seeing the photo of Jesse James Keene produced exigent circumstances justifying the agents' warrantless search of Unit B.  (Def. Swatski's Mot. for Reconsideration at 2-3.)  He contends that: (1) he could not have prevented the agents' entry into Unit B because he learned of their entry only after the fact; and (2) a reasonable supervisor in his shoes "would not have known that the conduct of the agents, preceding the exigency created by Adranih Ernay's loud scream, was anything other than reasonable."  (Id. at 3.)

As the Court has already concluded, whether the exigent circumstances exception applies in this case depends in part on whether Adranih Ernay consented to the agents' entry into her apartment before she was shown the photo of Keene.  See Kentucky v. King, --- U.S. ---, 131 S. Ct. 1849, 1862 (2011) (exigent circumstances exception to the warrant requirement applies only

"when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment"). Whether the qualified immunity doctrine applies on the basis of the exigent circumstances exception thus hinges upon the reasonableness of Swatski's belief that his subordinates obtained Adranih Ernay's consent to enter Unit B. After agents entered Unit B through the shared laundry room of the duplex, Swatski was told "they're in." (Def.'s Stmt. of Facts ¶ 33; Pl.'s Stmt. of Facts ¶ 33.) Given that the agents accessed the laundry room by way of Unit A, the reasonableness of Swatski's belief that the statement "they're in" signified a consensual entry into Unit B must necessarily be informed by issues about which there are genuine issues of material fact—namely, whether Faust consented to the two entries into Unit A and what Swatski knew or should have known about whether consent to enter Unit A was in fact given. In light of these genuine issues of material fact, the Court is unable to rule on Swatski's claim of qualified immunity at this stage of the litigation. The Court will not reconsider its denial of Swatski's motion for summary judgment as to Count II of the Complaint.

### C.   Counts I and II:  Qualified Immunity – Reasonable Belief That A Parole Absconder is in a Residence

Swatski's final argument is that he is entitled to qualified immunity because it was reasonable for him to believe that parole absconder Jesse James Keene was at 1004 Wagontown Road on the day of the search. (Def. Swatski's Mot. for Reconsideration at 3.) He contends that "[n]othing of record contradicts that [his] knowledge was formed from his 'cursory review' of the . . . investigation packet . . . and his observations upon his own late entry including young men with their hands raised and a woman crying." (Id.) Swatski is correct that there is no factual dispute regarding the extent of his review of the briefing packet, and that the Court did not rule on the issue of qualified immunity based on Swatski's belief that Keene was present at

5

plaintiffs' property. The Court now considers the issue and concludes that Swatski is not entitled to qualified immunity based on his belief that Keene was present at plaintiffs' property the day of the search.

The exception to the warrant requirement upon which Swatski relies is an officer's "reasonable belief [that a parole absconder] (1) lived in the residence, and (2) is within the residence at the time of entry." United States v. Veal, 453 F.3d 164, 167 (3d Cir. 2006) (internal quotation marks omitted). As an initial matter, Swatski's argument that, upon entering Unit B, he observed "young men with their hands raised and a woman crying" is irrelevant to the Court's determination whether it was reasonable for him to believe, before the PBPP agents arrived at plaintiffs' property, that Keene was present on the premises. The only evidence presented on that issue is what Swatski learned in his "cursory review" of the briefing packet on the morning of the search. As discussed more fully below, the Court concludes that Swatski is not entitled to qualified immunity based on that ground.

In March 2008, PBPP agent Todd H. Childs conducted a fugitive investigation for Keene. (Def.'s Stmt. of Facts ¶¶ 3-4; Pl.'s Stmt. of Facts ¶¶ 3-4.) Childs prepared a briefing packet that listed Stephanie Leland as Keene's spouse; listed 1004 Wagontown Road, Coatesville, Pennsylvania as Leland's place of residence; and noted that 1004 Wagontown Road was a possible address with which Keene was associated from June 2006 to March 2008. (Def.'s Stmt. of Facts ¶ 6; Pl.'s Stmt. of Facts ¶ 6; Def.'s Mot. for Summ. J., Exs. 1, 4.) As part of his investigation, Childs drove past 1004 Wagontown Road three or four times one day to surveil the property. (Def.'s Stmt. of Facts ¶ 4; Childs Dep. at 33-37.) On the morning of the PBPP agents'

search for Keene at plaintiffs' property, Swatski gave Childs's briefing packet a "cursory review." (Swatski Dep. at 111.)

Plaintiffs argue that the information in Childs's briefing packet was incorrect, and that a search of public records would have revealed that Leland was not married to Keene and that she did not reside at 1004 Wagontown Road in March 2008. (Pl.'s Stmt. of Facts ¶ 4.) Swatski concedes that "[p]laintiffs show the inaccuracy of the information in the briefing packet," but argues that they do not contest the sources from which the inaccurate information was obtained. (Def.'s Stmt. of Facts ¶ 7.)

The doctrine of qualified immunity shields a government official from liability "regardless of whether [his] conduct results from a mistake of law, mistake of fact, or mistake based on mixed questions of law and fact." Montanez v. Thompson, 603 F.3d 243, 250 (3d Cir. 2010). The availability of qualified immunity is a question of law to be decided by the court. Curley v. Klem, 499 F.3d 199, 211 (3d Cir. 2007). As supervisor of the search for Keene on March 18, 2008, Swatski had the authority to cancel the search and to "stop [the PBPP agents] from going to . . . 1004 Wagontown or any other residence, for any specific reason." (Swatski Dep. at 63.) Swatski did not review Childs's briefing packet until the morning of the search, and even then, he gave the packet a mere "cursory review." Given the lack of a search warrant for 1004 Wagontown Road, Swatski and his team knew, or should have known, prior to their departure for 1004 Wagontown Road, that they could search the duplex only if they obtained plaintiffs' consent or if they reasonably believed Keene was present at the property. Swatski's belief that Keene was at plaintiffs' property on March 18, 2008 therefore was crucial; aside from

plaintiffs' consent, it was the only other ground upon which the PBPP could rely to search plaintiffs' property.

The Court concludes that Swatski's "cursory review" of the briefing packet the morning of the search was insufficient to allow him to form a "reasonable belief" that Keene was at 1004 Wagontown Road on March 18, 2008. A reasonable agent in Swatski's supervisory position would have conducted more than a "cursory review" of the briefing packet. Although a jury could find otherwise in determining the applicability of the underlying exception to the warrant requirement, the Court concludes, for qualified immunity purposes, that Swatski's cursory review of the briefing packet is insufficient to shield him from suit.

## V. CONCLUSION

For the foregoing reasons, Defendant Swatski's Motion for Reconsideration is granted in part and denied in part. The Court, having not addressed in its Memorandum and Order of July 22, 2011, the issue of qualified immunity based on Swatski's belief that a parole absconder was at plaintiffs' property the day of the search, now addresses the issue and concludes that Swatski is not entitled to qualified immunity on that ground. Swatski's Motion for Reconsideration is denied in all other respects. An appropriate order follows.